The Chancellor.
The complainant and defendant, with their two brothers and two sisters, were seized, as tenants in common, of a tract of land of about forty acres, in the county of Morris. It had been set oil* as their mother’s dower. She occupied it, from the year 1825 until she died, in the year 1850. In the year 1833, the complainant left the state of New Jersey, and was absent until after his mother’s death. When he left the state, he left behind him, wholly unprovided for, his wife, who was partially deranged, and several children, one of whom was a daughter, four or five years of 'age. The mother was sent to the poor-house of the county. The daughter was sent to her grandmother, the complainant’s mother, with whom she lived, and by whom she was provided for until the year 1838, with the exception of one year during that period, when she was taken care of and supported by her brothers.
In a few days after the death of Nancy Tomkins, the complainant’s mother, the defendant proved her will, as one of the executors. Two days after proving the will, he caused a writ of foreign attachment to be issued against the complainant, and attached the complainant’s interest in the forty acre tract. On the 10th of August, 1850, he presented before the auditors a written claim for fourteen hundred and forty-three dollar, for the maintenance, by his testatrix, of the complainant’s daughter, from March, 1838, to March, 1848. The auditors reported there was due to the executor the sum of eleven hundred and sixty- *514 five dollars and twenty cents. The complainant’s interest in the property was sold upon the judgment in attachment, ■ and the defendant purchased it for fifty dollars, which was very much below its real value. The defendant purchased for himself and his two brothers and two sisters. They afterwards sold the land for twenty-eight hundred dollars.
The bill alleges, that the proceedings on the part of the defendant, in causing the attachment to be issued against the complainant, and in procuring judgment to be entered, was fraudulent; that it was all a mere contrivance to get hold of the complainant’s interest in the property, and that it is against good conscience, under the circumstances, for the defendant to hold the consideration he received for the property. The bill prays that the defendant may be decreed to account to him for the value of that interest.
The power of a court of equity to look into the judgments of other courts, and relieve against them, on the ground of fraud, is well established. It was affirmed in this court, in Glover v. Hedges, Saxton 119; Boulon v. Scott’s adm’rs et al., 2 G. C. R. 236, 241; Vanmeter v. Executor of Jones, 2 G. C. R. 523; Gifford, administrator, v. Thorn, 1 Stockton 703. The authorities are cited, in these several cases, where the jurisdiction has been sustained. Where the judgment has been procured by artifice or concealment, on the part of the plaintiff, and the court where the fraud has been perpetrated is not able to afford adequate relief, there this court will take hold of the party who has committed the fraud, and will prevent his using the judgment to the injury of his adversary; or if he has enforced his judgment, this court will hold him as a trustee, and compel him to account for the fruits of his iniquity. In Barnesty v. Powell, 1 Ves. 285, case 146, Lord Hardwick says—“ though this court cannot set aside a judgment of a common law court obtained against conscience, yet it will decree the party to acknowledge satisfaction *515 on that judgment, though he has received nothing — because obtained where nothing was due; so it cannot set aside a fine for being obtained by fraud and imposition, as the court of C. B. to a certain degree and with some restriction may: yet, on a conveyance so obtained, this court never sent the plaintiff to C. B. to set it aside; hut considers the person obtaining the estate, even by fine, as a trustee, and decreed him to reeonvey on the general ground of laying hold of the ill conscience of the party, to make him do what is necessary to restore matters as before.” This court may grant an injured party relief against the fraudulent use of a bona fide judgment. If by any artifice, or unconscionable contrivance, ethe plaintiff has become himself the purchaser of the defendant’s property at a grossly inadequate price, this court will grant relief by holding him a trustee, and will compel him to account for the property at its fair value, or subject it to another sale. And as this court has frequently granted relief against awards fraudulently obtained against verdicts and probates of wills, and even against private acts of legislative bodies obtained by fraud, with much greater propriety will it relieve against a fraudulent judgment, where the defendant has had no opportunity of being heard. The usual ground, upon which a court of equity refuses to interfere with a judgment, is because the defendant should have protected himself in the court where the judgment was obtained. In a case like the present, of foreign attachment, where the proceeding is in rem, and the judgment is obtained without the knowledge of the defendant, and the proceedings are all necessarily ex parte, it would be hard, indeed,'if this court could not interpose to protect a party against the fraud of the plaintiff’. The propriety of this court’s interfering in such cases is too obvious to require its being vindicated. But even in a case where a judgment has been obtained in the absence of a party, and upon a hearing entirely ex parte, this court will not try the merits of a ease over *516 again where those merits have been properly submitted to the tribunal established by law to hear and adjudicate upon them. In the case of foreign attachments, auditors are appointed by the court, before whom the claims are proved. There is no appeal from their decision. If the plaintiff imposes a fictitious claim upon the auditors, or a claim which has been satisfied, and for which the defendant has a receipt — in fine, if he conceals from the auditors any fact which tends to show that his claim is not a valid one, he commits a fraud upon the absent party, against the consequences of which this court will protect him, if it is within its power to do so, either by enjoining the enforcement of the claim at law, or, if the judgment is executed, by compelling such restitution to be made as is just under the circumstances of the case.
The complainant alleges that there was nothing due from him to the defendant, as the executor of Nancy Tomkins, and that the defendant knew it. That the complainant’s daughter was supported by the testatrix, from the year 1833 until the year 1848, is not disputed. But it is said there was no express contract that she should be remunerated for the support and maintenance of the child, and that the law would not imply a contract. Whether the law would imply a contract,, or not, must depend upon circumstances. The parties have both gone into evidence in this suit in support of and in opposition to the claim. But if this question was properly presented to the auditors without any concealment, it is not open for investigation here. If the complainant had shown an agreement between himself and mother that she would adopt the child, and maintain her without compensation, I am inclined to think that he would have been entitled to relief, even without proof of any knowledge on the part of the defendant of such an agreement. Because the defendant, acting only in his representative capacity, might well be supposed not to have that information. And so, if the complainant should now produce a receipt, it would not be *517 necessary to show that the defendant knew of its existence when he made the claim. Then relief would be granted, so far as it could be, against the estate, on the ground, that it would be unconscionable to permit the estate to reap any benefit from the judgment under such circumstances. But here is conflicting evidence, as to the facts, from which a contract might be implied. The position taken by the complainant’s counsel is, that a parent is under no legal obligation to support his child, and that whoever furnishes a child with necessaries, must do it gratuitously; that no recovery can be had for such necessaries, unless they were furnished under an express contract with the parents. What was said by the judges in the cases of Urmston v. Newcomer, 4 Ad. & Ellis 899, 31 E. C. L.; Mortimore v. Wright; 6 M. & W. 48, would seem to sustain the position. Such is not the law in New Jersey. The law, as it has been adopted in this state, is as laid down by the court in Van Valkinburgh v. Watson and Watson, 13 J. R. 480. A parent is bound to provide his infant children with necessaries; and if ho neglect to do so, a third person may supply them, and charge the parent with the amount. But such third person must take notice of what is necessary for the infant, according to his situation in life; and where the infant lives with his parent, and is provided for by him, a person furnishing necessaries cannot charge the parent. “ When the infant is sub potestate parentis, there must be a clear and palpable omission of duty, in that respect, on the part of the parent, in order to authorize any other person to act for, and charge the expense to the parent.” If a case can be suggested where the moral obligation of a father to provide for his offspring can be enfoi'ced as a legal one, it would be difficult to find one more apposite than this. The complainant left his child, about three or four years of age, with its destitute and heart-broken mother. He abandoned them both to the charities of the world. The mother found shelter in the alms-house. The daughter *518 was forced upon its grandmother, a woman then advanced in life, and of moderate means for her own support. There is no evidence that, for the fifteen years the child was under the care of its grandmother, the father ever made any inquiry as to its whereabouts or welfare. Now, in view of all these facts, if there was any doubt as to the legal obligation of the father to provide for his child, and of his legal liability to such as should supply that child with the necessaries of life, the moral obligation is so strong that a court of equity would feel but little inclined to grant relief, on any such ground as that the moral obligation had been converted into a legal one.
An effort was made by the complainant to show, that the case was presented to the auditors as a mere matter of form, and that there was no proof before the auditors. But in this, the complainant failed. The witness says, she was one of the witnesses before the auditors; that she was not at that time asked any question as to whether the child lived with her grandmother as an adopted child, or on board; that she was asked what it was worth to board a child of that age, and she thinks she did not. give testimony at that time to any other point. But on her cross-examination she says, she was examined to prove the length of time the child lived with its grandmother, and that she stated the age when she -went to her grandmother’s, and her age when she left; she thinks she stated that if she had a girl to board and school, and she did not do anything, it would be worth ten shillings a week; that she stated to the auditors that she did things that she was told to do. It is fair to presume, from the testimony of this witness, that the whole matter was fairly presented to the auditors ; and there is nothing to justify the inference that there was any material fact within the knowledge of the defendant that was concealed. The complainant might have examined the auditors, had he seen fit to do so.
The bill charges that the defendant knew where the *519 complainant was, and purposely concealed from him the fact of the attachment. The defendant denies this, and there is no evidence to sustain the charge. Mrs. Good-speed, the complainant’s daughter, was at Newark when the attachment was taken out, and she says she did not hear of it. But even if there was any concealment, it would only be a very slight circumstance, indeed, to establish such fraud as would justify this court’s interfering with the judgment.
Another fact is relied upon to show fraud; and that is, the purchase, by the defendant, of the complainant’s interest in the land for the small consideration of fifty dollars. I think there is proof enough, from the answer, in connection with the fact of the conveyance to Dikeman, so short a time after the property was struck off’ at the auditors’ sale, with other circumstances, to establish the fact, that prior to the purchase by the defendant, he and his two brothers and two sisters had agreed to sell the whole forty acres to Dikeman for twenty-eight hundred dollars. This sum would make the complainant’s interest in the land of the value of little over five hundred dollars. Under such circumstances, the purchase by the executor should be held, in equity, a purchase for the estate which he represented. He had already sold the complainant’s interest for $>500, and the sale amounted to nothing more than a mere mode to make the title. It was a fraud for him to make a speculation of $>450 out of the estate under such circumstances. But I cannot grant the complainaut any relief for this fraud upon these pleadings. The complainant is not entitled to this money. The claim against him amounted to upwards of a thousand dollars. Equity would require that the defendant should account to the estate which he represents for the amount he actually received for the property, and, perhaps, that the complainant should be credited the same upon the judgment. The proper parties are not before the court for such a decree.
*520 It is very evident the complainant has been harshly dealt with. I am satisfied that the defendant and his brothers and sisters knew they were wronging the complainant in enforcing that claim. I do not believe it was the intention of his mother to claim anything for the support of her grandchild, and I think the defendant has done injustice to her, as well as to this complainant, in prosecuting the claim. The fact, that Nancy Tomkins had the same means of enforcing the claim that her executor had, and that, by her will, she made specific bequests of every article of property she possessed, making no reference to any residuary estate, or to this claim, with many other facts in the cause, are quite sufficient to convince any one, that although the complainant’s mother may have had a legal claim against him, yet that it was never her intention to enforce it. The money was not needed to pay any debt of the estate. The defendant, and those connected with him, have taken money from their brother which does not honestly belong to them. But the defendant has obtained a legal advantage, and I do not see how the eoui’t can interfere with it.
The bill must be dismissed with costs.